**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

CHRISTOPHER R. BURI, and
JULIE D. BURI,

      Plaintiffs,

v.

AZIYO BIOLOGICS, INC.,
MEDTRONIC SOFAMOR DANEK USA, INC., and
SPINALGRAFT TECHNOLOGIES LLC,

      Defendants.

---

**PLAINTIFFS' COMPLAINT FOR DAMAGES AND JURY DEMAND**

---

Plaintiffs, Christopher R. Buri and Julie D. Buri, bring this Complaint against Defendants, Aziyo Biologics, Inc., Medtronic Sofamor Danek USA, Inc., and SpinalGraft Technologies, LLC, (collectively "Defendants"), and allege upon personal knowledge as to their own experience, their counsel's investigation, and upon information and belief as to all other matters the following:

**I.    PARTIES**

1. Plaintiff, Christopher R. Buri ("Christopher"), is a citizen of the State of Colorado.

2. Plaintiff, Julie D. Buri ("Julie"), is a citizen of the State of Colorado.

3. Defendant, Aziyo Biologics, Inc. ("Aziyo"), is a Delaware corporation that maintains it principal place of business at 12510 Prosperity Drive, Suite 370, Silver Spring, Maryland 20904.

4. Defendant, Medtronic Sofamor Danek USA, Inc. ("Medtronic"), is a Minnesota corporation that maintains its principal place of business at 2600 Sofamor Danek Dr., Memphis, Tennessee 38132.

5. Defendant, SpinalGraft Technologies, LLC ("SpinalGraft"), is a Tennessee limited liability company that maintains its principal place of business at 4340 Swinnea Road, Memphis, Tennessee 38118.

## II.   JURISDICTION AND VENUE

6. Plaintiffs incorporate by reference all other allegations of this Complaint as if fully set forth herein.

7. The court has jurisdiction pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,0000, exclusive of interest and costs. Plaintiffs are citizens of the State of Colorado. Aziyo is a citizen of the State of Delaware and the State of Maryland. Medtronic is a citizen of the State of Minnesota and the State of Tennessee. SpinalGraft's sole member is Medtronic and, as a result, it is a citizen of the State of Minnesota and the State of Tennessee. Therefore, there is complete diversity among the Plaintiffs and Defendants.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Colorado.

## III.   NATURE OF CLAIMS

9. Plaintiffs incorporate by reference all other allegations of this Complaint as if fully set forth herein.

10. FiberCel Fiber Viable Bone Matrix ("FiberCel") is a bone repair product primarily used in bone grafting procedures associated with orthopedic and spinal surgeries.

11. Aziyo manufactures FiberCel from human cellular and tissue-based products that are harvested from cadavers.

12. Azyio has contractually retained Medtronic and/or SpinalGraft to sell and distribute FiberCel throughout the United States.

13. On or about June 2, 2021, Aziyo announced a voluntary recall pertaining to a single donor lot of FiberCel. The recall was instituted after Aziyo learned of post-surgical infections in patients treated with FiberCel, including some patients who tested positive for tuberculosis.

14. The recalled lot consisted of 154 units of FiberCel derived from a single donor, which were shipped to facilities in 20 different states, including Colorado.

15. On or about June 14, 2021, the United States Centers for Disease Control and Prevention ("CDC") reported a multistate tuberculosis outbreak which occurred in patients who had recently undergone spinal surgery using FiberCel products from the recalled lot.

16. The CDC stated: "Patients who underwent spinal fusions or fracture repairs using FiberCel products from Lot NMDS210011 are likely to have been exposed to MTB," the bacterium called *Mycobacterium tuberculosis* which causes tuberculosis disease.

17. The CDC recommended that all patients who received FiberCel product from the recalled lot immediately begin drug treatment for tuberculosis.

18. Christopher, who is married to Julie, is one of the patients who received FiberCel product from the recalled lot, and has now tested positive for tuberculosis.

## IV.  FACTUAL ALLEGATIONS

19. Plaintiffs incorporate by reference all other allegations of this Complaint as if fully set forth herein.

3

20. Plaintiffs, Christopher and Julie, were married on February 12, 1988, and remain husband and wife.

21. On April 14, 2021, Christopher underwent a spinal fusion surgery at S1-L5 and a laminectomy at L5-L2.

22. The aforementioned surgery was performed by Dr. Benjamin A. Rubin, M.D., a neurosurgeon certified by the American Board of Neurological Surgery, at Saint Joseph Hospital in Denver, Colorado.

23. During the surgery, Dr. Rubin implanted the FiberCel product, Lot number NMDS210011, in Christopher's body.

24. The FiberCel product contained no adequate warning or instruction to Dr. Rubin, Christopher's healthcare providers, or Christopher of the danger that he could contract tuberculosis if a FiberCel product was used during the surgeries.

25. While the surgery was initially deemed a success, Christopher did not feel that he was healing properly after the surgery. On May 25, 2021, Christopher began to experience chronic pain. Christopher immediately brought these ailments to Dr. Rubin's attention, but Dr. Rubin was unable to eliminate Christopher's symptoms or conclusively determine their cause.

26. On June 2, 2021, Aziyo issued a recall of 154 units of Fiber Cell product from lot number NMDS210011. The lot consisted of 154 units of FiberCel, all derived from a single "donor" that were shipped to facilities in 20 states (the "Recalled Lot").

27. Aziyo issued the notice of the recall to hospitals that received product from this specific lot after learning of post-surgical infections in patients that tested positive for tuberculosis.

28. On June 8, 2021, Christopher received a call from Dr. Rubin who informed him that he had been contacted by a representative of the Colorado Department of Public Health and Environment ("CDPHE") who was investigating a cluster of tuberculosis infections in individuals who had been implanted with the FiberCel product. Dr. Rubin also advised Christopher that he would need to undergo further testing and evaluation for tuberculosis.

29. On June 8, 2021, Christopher also received a call from Jennifer Assman, a registered nurse affiliated with Denver Health's Tuberculosis Clinic, who provided him with more information regarding the tuberculosis infections associated with the FiberCel products. Ms. Assman also scheduled Christopher to undergo a chest x-ray, blood tests, and a consultation with Dr. Michelle Haas, the Director of the Denver Health's Tuberculosis Clinic, on June 9, 2021 at Denver Health.

30. On June 9, 2021, Christopher presented to Kaiser Permanente Colorado as scheduled and underwent medical imaging including an x-ray, and an MRI. The results of said imaging revealed a fluid sack at fusion area S1/L5 indicating infection.

31. Based on the results of his June 9, 2021 medical imaging and in accordance with the CDC's directives, Dr. Haas prescribed Christopher a regimen of medications to treat Christopher's tuberculosis infection.

32. Christopher continues to receive medications to treat his tuberculosis on a daily basis.

33. Christopher did not have tuberculosis before the FiberCel product was implanted in his body on April 14, 2021.

34. At all relevant times, Aziyo designed, manufactured, marketed, distributed and/or sold FiberCel Fiber Viable Bone Matrix ("FiberCel"), which is a human tissue allograft[1] consisting of cryopreserved cancellous and corticocancellous bone matrix that is allegedly aseptically processed to preserve native factors that support bone repair.

35. FiberCel is a fiber-based bone repair product made from human tissue and engineered to be like natural tissue. It is marketed for use in orthopedic or reconstructive bone grafting procedures in combination with autologous bone or other forms of allograft bone or alone as a bone graft.

36. Aziyo manufactures FiberCel from human cellular and tissue-based products that are harvested from a human cadaver or "donor."

37. Aziyo represents and warrants that each "donor" cadaver is screened and tested by Aziyo's Medical Director or physician designee. Aziyo further represents and warrants that said screening and testing includes "[c]ommunicable disease testing performed by a laboratory registered with [The Food and Drug Administration "FDA"] to perform such testing on human specimens … and [the donor] was found to be negative or non-reactive for" HIV, hepatitis B, hepatitis C, and syphilis."

38. While Aziyo warns that "current technologies may not preclude the transmission of infectious agents or disease, including hepatitis and HIV," it does not expressly warn users, consumers, physicians, or the medical community at large that FiberCel could transmit tuberculosis.

---

[1] An allograft is a human graft product sourced from a different individual than the patient receiving the tissue.

39. Aziyo manufactures FiberCel at facility located at 880 Harbour Way S., Suite 100, Richmond, California, 94804 ("California Facility").

40. Aziyo distributes FiberCel from its California Facility through certain commercial agreements with major medical devices companies to promote or commercialize some of its products. In turn, Aziyo's commercial partners use their networks of more than 2,000 sales representatives, clinical specialists, and independent sales agents - more than 800 of which are focused on Aziyo's FiberCel products – to sell and distribute its products.

41. On or about October 8, 2019, Aziyo announced that it signed an exclusive, multi-year distribution agreement with Medtronic, whereby Aziyo would manufacture and supply FiberCel to Medtronic for distribution in the U.S. orthopedic market.

42. SpinalGraft is a wholly owned subsidiary of Medtronic responsible for selling and distributing FiberCel.

### V.   COUNT I - STRICT PRODUCT LIABILITY

43. Plaintiffs incorporate by reference all allegations of this Complaint as if fully set forth herein.

44. Aziyo was a manufacturer of the Recalled Lot of FiberCel.

45. Aziyo was engaged in the business of selling FiberCel for resale, use, or consumption.

46. Aziyo sold the Recalled Lot of FiberCel that Dr. Rubin implanted in Christopher on April 14, 2021.

47. The Recalled Lot of FiberCel was defective in that it became contaminated with the bacterium *Mycobacterium tuberculosis*, which causes the disease tuberculosis, during its

7

manufacture. Because of this defect, the Recalled Lot of FiberCel was unreasonably dangerous in that it created a risk of harm to persons that would not ordinarily be expected.

48. FiberCel was also defective in its design as it was derived from human tissue that was not tested for relevant communicable disease, including tuberculosis, and thereby permitted said harmful pathogens from being transmitted to the recipient of the FiberCel product. Because of this defect, FiberCel was unreasonably dangerous in that the foreseeable risks of harm posed by FiberCel are sufficiently great in relation to its foreseeable therapeutic benefits that reasonable health-care providers, knowing of such foreseeable risks and therapeutic benefits, would not prescribe FiberCel for any class of patients.

49. The Recalled Lot of FiberCel was further defective and unreasonably dangerous in that it lacked any warning or instruction to healthcare providers and patients concerning the specific and foreseeable risk of a tuberculosis infection from the use of FiberCel.

50. The defective and unreasonably dangerous nature of the Recalled Lot of FiberCel warning and instructions caused Dr. Rubin to select and implant the Recalled Lot of Fiber Cell in Christopher on April 14, 2021.

51. The specific risk of contracting a tuberculosis infection from the use of the FiberCel product was not apparent to an ordinary user or consumer of the product, including Christopher and his healthcare providers.

52. The Recalled Lot of FiberCel was defective at the time it was sold by Aziyo or left its control.

53. Christopher was a person who would reasonably be expected to use, consume, or be affected by the Recalled Lot of FiberCel.

54. The Recalled Lot of FiberCel was expected to reach the user or consumer without substantial change in the condition in which it was sold.

55. The Recalled Lot of FiberCel did reach Christopher without substantial change in the condition in which it was sold.

56. As a direct and proximate result of the defective and unreasonably dangerous condition of the Recalled Lot of FiberCel, Christopher has suffered damages including serious personal injury and illness, pain and suffering, past and future medical costs and expenses, past and future medical monitoring, inconvenience, and loss of enjoyment, quality of life, and diminished life expectancy.

57. As a direct and proximate result of the defective and unreasonably dangerous condition of the Recalled Lot of FiberCel, Julie has suffered the loss of love, companionship, affection, and household services of her husband, Christopher.

VI.  **COUNT II - STRICT PRODUCT LIABILITY FOR MISREPRESENTATION**

58. Plaintiffs incorporate by reference all allegations of this Complaint as if fully set forth herein.

59. Defendants were engaged in the business of selling FiberCel for resale, use, and/or consumption.

60. Defendants sold the Recalled Lot of FiberCel that Dr. Rubin implanted in Christopher on April 14, 2021.

61. The Defendants misrepresented a fact concerning the character or quality of the Recalled Lot of the FiberCel to Christopher and/or his healthcare providers, namely that it had

been screened and tested for relevant communicable diseases and was safe for implantation within the human body.

62. This misrepresented fact was material to potential purchasers or users of the product including, Christopher and his healthcare providers.

63. The misrepresentation was made to potential purchasers or users as members of the public at large.

64. As a purchaser or user, Christopher and/or his healthcare providers reasonably relied on the misrepresentation.

65. Christopher and/or his healthcare providers were persons who would reasonably be expected to use, consume, or be affected by the Recalled Lot of the FiberCel.

66. As a direct and proximate result of Christopher's and his healthcare providers' reasonable reliance on the Defendants' misrepresentation, Christopher suffered damages including serious personal injury and illness, pain and suffering, past and future medical costs and expenses, past and future medical monitoring, inconvenience, and loss of enjoyment, quality of life, and diminished life expectancy.

67. As a direct and proximate result of Christopher's and his healthcare providers' reasonable reliance on the Defendants' misrepresentation, Julie has suffered the loss of love, companionship, affection, and household services of her husband, Christopher.

## VII. COUNT III - NEGLIGENCE

68. Plaintiffs incorporate by reference all allegations of this Complaint as if fully set forth herein.

69.     Aziyo owed a duty to Christopher to inspect and test the human tissue used to manufacture the Recalled Lot of FiberCel for the presence of relevant communicable diseases, including tuberculosis, before incorporating said human tissue into the product and placing it into the stream of commerce.

70.     Aziyo negligently failed to inspect and test the human tissue used to manufacture the Recalled Lot of FiberCel for the presence of relevant communicable diseases, including tuberculosis, before incorporating said human tissue into the product and placing it into the stream of commerce.

71.     Aziyo, Medtronic, and SpinalGraft knew or in the exercise of reasonable care should have known that (1) the use of the Recalled Lot of FiberCel may be harmful or injurious to a consumer or user due to the presence of *Mycobacterium tuberculosis* and (2) that the risk of harm or injury from said contamination was not obvious to a reasonable user.

72.     Aziyo, Medtronic, and SpinalGraft owed a duty to warn Christopher and/or his healthcare providers of the risk of contracting tuberculosis when the Recalled Lot of FiberCel was used for its intended and foreseeable purpose, because it knew, or in the exercise of reasonable care should have known, that (1) the use of the Recalled Lot of FiberCel product may be harmful or injurious to a consumer or user and (2) that the risk of harm or injury was not obvious to a reasonable user.

73.     Neither Aziyo, Medtronic, nor SpinalGraft warned Christopher and/or his healthcare providers of the risk of contracting tuberculosis when the Recalled Lot of FiberCel was used for its intended and foreseeable purpose.

74. Aziyo, Medtronic, and SpinalGraft negligently breached each and every duty they owed to Plaintiffs by failing to exercise reasonable care to prevent the Recalled Lot of FiberCel from creating an unreasonable risk harm to Christopher while it was being used in a manner the Defendants might have reasonably expected.

75. As a direct and proximate result of the Defendants' negligence, Christopher has suffered damages including serious personal injury and illness, pain and suffering, past and future medical costs and expenses, past and future medical monitoring, inconvenience, and loss of enjoyment, quality of life, and diminished life expectancy.

76. As a direct and proximate result of the Defendants' negligence, Julie has suffered the loss of love, companionship, affection, and household services of her husband, Christopher.

## VIII.   COUNT IV – BREACH OF EXPRESS WARRANTY

77. Plaintiffs incorporate by reference all allegations of this Complaint as if fully set forth herein.

78. Defendants sold the Recalled Lot of FiberCel that Dr. Rubin implanted in Christopher on April 14, 2021.

79. Christopher is a person who was reasonably expected to use, consume, or be affected by the Recalled Lot of FiberCel.

80. In connection with the sale, Defendants expressly warranted to Christopher and/or Christopher's healthcare providers that the Recalled Lot of FiberCel was screened and tested for relevant communicable diseases and was safe for implantation within the human body.

81. Defendants breached this express warranty in that the Recalled Lot of FiberCel was not tested for tuberculosis and was contaminated with *Mycobacterium tuberculosis* at the time of sale.

82. Christopher, his healthcare providers, the CDC, and/or the CDPHE, notified Defendants that the Recalled Lot of FiberCel was not as warranted and that the contaminated FiberCel had been implanted in Christopher, within a reasonable time after the nonconformity was discovered.

84. As a result of Defendants' breach of warranty, Christopher has suffered damages including serious personal injury and illness, pain and suffering, past and future medical costs and expenses, past and future medical monitoring, inconvenience, and loss of enjoyment, quality of life, and diminished life expectancy.

85. As a result of Defendants' breach of warranty, Julie has suffered the loss of love, companionship, affection, and household services of her husband, Christopher.

IX. **COUNT V – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

86. Plaintiffs incorporate by reference all allegations of this Complaint as if fully set forth herein.

87. Christopher is a person who was reasonably expected to use, consume, or be affected by the Recalled Lot of FiberCel.

88. Defendants are merchants with respect to the Recalled Lot of FiberCel.

89. Defendants sold the Recalled Lot of FiberCel that Dr. Rubin implanted in Christopher on April 14, 2021.

90. An implied warranty that the goods were merchantable arose by operation of law as part of the sale. *See* Colo. Rev. Stat. § 4-2-314.

91. Defendants breached the implied warranty of merchantability in that the Recalled Lot of FiberCel was not of merchantable quality at the time of sale because it was contaminated with *Mycobacterium tuberculosis*.

92. As a result of Defendants' breach of the implied warranty of merchantability, Christopher has suffered damages including serious personal injury and illness, pain and suffering, past and future medical costs and expenses, past and future medical monitoring, inconvenience, and loss of enjoyment, quality of life, and diminished life expectancy.

93. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Julie has suffered the loss of love, companionship, affection, and household services of her husband, Christopher.

## X.     RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

a) An award of compensatory damages to Plaintiffs for past and future damages, including by not limited to pain and suffering for severe and permanent personal injuries sustained by Plaintiffs, health care costs, medical monitoring, together with interest and costs as provided by law; and

b) An award of attorney's fees and costs;

c) Pre-judgment and post-judgment interest; and

d) All other relief that the Court finds just and proper.

Respectfully submitted,

*/s/Jason R. Reese*
Jason R. Reese
Timothy L. Karns
Wagner Reese, LLP
11939 N. Meridian St., Suite 100
Carmel, IN 46032
Telephone: (317) 569-000
E-mail: jreese@wagnerreese.com
        tkarns@wagnerrees.com

*Attorneys for Plaintiffs*


*/s/R. Craig Ewing*
R. Craig Ewing
Ewing Law P.C.
3900 South Wadsworth Blvd. Suite 370
Lakewood, CO 80235
Telephone: (303) 566-9968
Email:     rcraigewing@gmail.com

*Attorney for Plaintiffs*